**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JOHN GILBERT ADAMS, JR.
dba MODERN DESIGN AQUASCAPING
fdba MODERN DESIGN LANDSCAPING
fdba FORTUNE HIGH TECH MARKETING
EUSTACIA YVONNE ADAMS
aka EUSTACIA C. ADAMS
aka STACY Y. ADAMS

                Debtors

Case No. 3:15-bk-32662-SHB

**MEMORANDUM ON
<u>TRUSTEE'S OBJECTION TO EXEMPTION</u>**

**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
                             John P. Newton, Jr., Esq.
                             1111 Northshore Drive
                             Suite S-570
                             Knoxville, Tennessee  37919
                             Attorneys for Debtors

                            MOSTOLLER, STULBERG, WHITFIELD & ALLEN
                             Tracey V. Williams, Esq.
                             136 South Illinois Avenue
                             Suite 104
                             Oak Ridge, Tennessee  37830
                             Attorneys for Ann Mostoller, Chapter 7 Trustee

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the Court on the Trustee's Objection to Debtor's Claim of Exemption Under T.C.A. § 26-2-103 (Objection to Exemption) filed by the Chapter 7 Trustee, Ann Mostoller (Trustee), on October 20, 2015, objecting to the attempt by Debtor John Adams to exempt more than $10,000.00 in personal property under Tennessee Code Annotated § 26-2-103. The record before the Court includes the Stipulation of Facts filed March 1, 2016; fourteen exhibits admitted into evidence at the hearing held on March 11, 2016; and the testimony of Debtors at the hearing. The Court also takes judicial notice of material undisputed facts of record in Debtors' bankruptcy case pursuant to Rule 201 of the Federal Rules of Evidence. As stated in the Pre-Trial Statement of Issues submitted by the parties, the Court is asked to decide the following issues: (1) whether the funds in the First Tennessee Bank account are the sole property of Mr. Adams; (2) if the funds are the sole property of Mr. Adams, are Debtors entitled to jointly claim the funds exempt under Tennessee Code Annotated § 26-2-103; (3) if the funds are the sole property of Mr. Adams and Debtors are not entitled to jointly claim the funds as exempt, does Mr. Adams exceed his $10,000.00 allowable personal property exemption under section 26-2-103; and (4) whether the Trustee timely objected to Debtors' amended Schedule C.[1]

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. 7052, 9014(c).

---

[1] Although the parties identified the last issue concerning the timeliness of the Trustee's objection, the Court will not address the issue beyond this footnote. It has been and will continue to be this Court's practice to allow objections to exemptions to carry over without a requirement to restate the objection when an amended exemption is filed and the basis for the Trustee's objection remains the same. In this case, the Trustee's basis for objecting did not change, a fact that was reiterated at every preliminary hearing held in this matter. Thus, "it would serve no purpose to require the Trustee to perform the perfunctory task of filing a 'formal' objection to the amended exemptions." *Cf. In re Grimes*, No. 08-12808-AJM-7A, 2009 WL 1117654, at *2 n.2 (Bankr. S.D. Ind. Apr. 22, 2009).

### I. Facts and Background

On September 2, 2015, Debtors filed the Voluntary Petition commencing this Chapter 7 bankruptcy case [Doc. 1], and the Trustee was duly appointed. Included within their statements and schedules, Debtors filed their Schedule B reflecting a "First TN Bank/Business Checking Act." (Account), designated as owned solely by Mr. Adams[2] and valued at $8,000.00 [Doc. 1]. Through their Schedule C and specifying Tennessee Code Annotated § 26-2-103 as the statutory basis, Debtors sought to exempt the account in the full amount of $8,000.00 in addition to other personal property for which the cumulative claimed exemption was $10,241.00[3] [Doc. 1]. The Trustee filed her Objection to Exemption on October 20, 2015, arguing that Mr. Adams claimed $16,550.00 individually and $2,341.00 jointly with Mrs. Adams in excess of the $10,000.00 statutory limit provided by Tennessee Code Annotated § 26-2-103 [Doc. 21]. Debtors amended Schedule B on November 13, 2015, to change the ownership designation of the Account from husband to joint and the amount from $8,000.00 to $11,962.88, the amount that was in the Account on the petition date [Doc. 27]. Schedule C, likewise, was amended, and the entire $11,962.88 was claimed by Debtors as exempt [*Id.*].[4]

### II. Analysis

When Debtors filed their bankruptcy case, the estate, consisting of all property and property interests they owned at the time, was created. 11 U.S.C. § 541(a). Notwithstanding that all property is included in the bankruptcy estate, to ensure that debtors retain sufficient property

---

[2] Debtors chose the ownership designation of "H" for "husband" rather than any of the other options of wife, joint, or community.

[3] The majority of this amount arose from $7,500.00 claimed as exempt under section 26-2-103 for a personal injury suit, the full value of which was claimed as $15,000.00 and scheduled by Debtors as the sole property of Mr. Adams [Doc. 21].

[4] In addition, Debtors amended the value of the personal injury suit from $15,000.00 to $10,148.00 and reduced the exemption claimed under section 26-2-103 for the personal injury suit from $7,500.00 to $2,648.00 [Doc. 27].

for their fresh starts, certain property interests may be exempted through 11 U.S.C. § 522, and are, in fact, "subtracted from the bankruptcy estate and not distributed to creditors," *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (citations omitted). In order to claim property as exempt, Federal Rule of Bankruptcy Procedure 4003(a) requires the filing of a statement listing the property and its value, the statutory basis for the exemption, and the amount of the claimed exemption. When married debtors file a joint petition, they may list property together and their bankruptcy estates are jointly administered; however, "their estates are in legal effect separate or several and each spouse can claim an exemption only in property from his or her separate estate." *In re Garbett*, 410 B.R, 280, 284 (Bankr. E.D. Tenn. 2009) (quotation marks and citations omitted).

"Exemptions are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors, and should be construed in light of the purpose for which they are created." *In re Lawless*, No. 10-36096, 2012 WL 2974759, at *7 (Bankr. E.D. Tenn. July 20, 2012) (quoting *In re Daley*, 459 B.R. 270, 274 (Bankr. E.D. Tenn. 2011) (brackets omitted); *see also In re Chapman*, 424 B.R. 823, 826 (Bankr. E.D. Tenn. (2010) (citations omitted) ("[W]hen it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen."). Parties in interest may object to claimed exemptions within thirty days after conclusion of the meeting of creditors or within thirty days after an amendment is filed, whichever is later. *See* Fed. R. Bankr. P. 4003(b)(1).

The objecting party (here, the Trustee) bears the burden of proof by a preponderance of the evidence, and if that burden is not met, the claimed exemptions "retain[ their] prima facie presumption of correctness and [will] stand[]." *Lawless*, 2012 WL 2974759, at *7 (citing Fed. R.

4

Bankr. P. 4003(c); *Garbett*, 410 B.R. at 284).  Absent objection, once the deadline to object set forth by Rule 4003(b)(1) passes, "the exemption is final and may not be contested by a party in interest, even if the debtor lacked a colorable statutory basis for claiming the exemption." *In re Reeves*, 521 B.R. 827, 831 (Bankr. E.D. Tenn. 2014) (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992)).

Because Tennessee has "opted out" of the federal exemptions pursuant to 11 U.S.C. § 522(b), Debtors were required to utilize Tennessee's statutory exemptions.  As with the federal exemption statutes, "[t]here is a 'long-standing rule' in Tennessee that its exemption statutes are to be liberally construed." *In re Dunn*, No. 14-33152, 2015 WL 1865567, at *2 (Bankr. E.D. Tenn. Apr. 1, 2015) (citing *In re Hogue*, 286 S.W.3d 890, 894 (Tenn. 2009)).  The statute at issue allows debtors an exemption in their equity interest in personal property "to the aggregate value" of $10,000.00.  Tenn. Code Ann. § 26-2-103.

The Trustee has argued that, notwithstanding the amendment to claim the Account as joint, Mr. Adams alone owns and is eligible to exempt the monies in the Account because it is a business account of his sole proprietorship.  Thus, the Trustee asserts, there is no presumption that the funds are owned by Debtors as tenants by the entireties.  In support of her objection, the Trustee has relied on Debtors' tax returns, which include a Schedule C Profit or Loss statement solely for Mr. Adams, and on Debtors' failure to prove that Mrs. Adams performs any actions on behalf of or is an owner of the business.

On the other side, Debtors have argued that they set up the Account with both of them as authorized signatories such that they are co-owners of the account.  They also assert that Mrs. Adams, who is a stay-at-home mother, has complete access to the account, which both she and Mr. Adams use to pay for groceries, utilities, and other household and family expenses.

5

Under Tennessee law, there is a rebuttable presumption that all property acquired during a marriage is held by both spouses as tenants by the entireties, the type of co-ownership with a right of survivorship held exclusively by a husband and wife. *In re Miller*, No. 12-33943, 2015 WL 2208369, at *8 (Bankr. E.D. Tenn. May 1, 2015) (citing *Garbett*, 410 B.R. at 286). In order to rebut the presumption, the objecting party must provide "evidence of circumstances or communications clearly indicating an intent that the property remain separate." *Garbett*, 410 B.R. at 288 (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 13-14 (Tenn. Ct. App. 2002)).

In support of their argument that they jointly hold the Account, both Debtors testified that they have no other bank account, that their household bills are paid from the Account, and that both of them have unlimited authority to deposit and withdraw funds from the Account and to access account information and pay bills online. Mr. Adams testified that everything in their household is jointly held and that all money he makes through operation of his business is deposited into the Account. He also testified that he writes most of the checks, which are for payment of business expenses, and Mrs. Adams pays most of the household bills online.[5] Similarly, Mrs. Adams testified that she has full use of the Account, that she is the one who physically goes to the bank and interacts with the bank tellers, and that she is the one who makes deposits and pays household bills online, while Mr. Adams manages the business side of the Account. Notwithstanding this testimony, the monthly bank statements for April through August 2015, include a number of personal as well as business withdrawals, but it cannot be ascertained whether any of the transactions were accomplished through online banking. [Trial Ex. 12.]

Irrespective of any testimony by Debtors that they intended for the Account to be held jointly, it is not held by Debtors as tenants by the entireties. Although the signature card for the

---

[5] This testimony was corroborated by Trial Exhibit 14, evidencing that all checks written and clearing the account in July 2015 were signed by Mr. Adams.

Account, which was created on September 21, 2010, under the name of "John Adams dba Modern Design Aquascaping" using Mr. Adams's Social Security number, contains the signatures of both Debtors as authorized signatories, the option for "[j]oint tenants with right of survivorship" is clearly not marked; instead, the option for "[a]dditional authorized signer (Power of Attorney)" is marked. [Trial Ex. 10.] The same is true for the signature card dated August 25, 2015, by which the name on the Account was changed to "Modern Design Aquascaping," using a business EIN number, expressly designating the account as a business account, and adding Debtors' son, Tristen Adams, as an authorized signatory along with Debtors. [Trial Ex. 11.] It is also undisputed that the Account is recognized by the bank as a "business" account, and Mrs. Adams testified that Debtors set it up as a business account in order to avoid execution on the funds by their creditors. Mr. Adams also testified that he could not explain the change on the Account signature card in 2015 [Trial Ex. 11] from his Social Security number on the initial signature card [Trial Ex. 10] to an EIN because he thought that the Account initially had been set up using an EIN when, on the advice of a First Tennessee Bank employee, Debtors had changed banks in 2010 to stop creditors that had been executing on their bank account at another institution. Thus, Debtors set up the Account as a business account to avoid creditors' collection attempts, and now, they want the account to be treated as a personal account so that it will be deemed joint to avoid creditors receiving a share in this case.

   Further, the record is clear that Mr. Adams alone owns and operates Modern Design Aquascaping. He testified that he builds and services waterfalls and ponds through the company "he" has owned and operated as a sole proprietorship since 1994, and that he – and sometimes his son, Tristen – makes the business decisions, works with clients, handles business records, prepares invoices, and manages the accounting on Quickbooks. The company's website

7

identifies only Mr. Adams as owner of Modern Design Aquascaping [Trial Ex. 7]; Mr. Adams's name is shown on invoices presented to clients [Trial Ex. 6]; the company's business license is in Mr. Adams's name, [Trial Ex. 5]; and his name alone is listed on Schedule C Profit or Loss From Business attached to Debtors' 2014 tax return. [Trial Ex. 4.]  Conversely, Mrs. Adams's name is not listed on any of the business records, and unlike Debtors' son, Tristen, she does not conduct any business on behalf of Modern Design Aquascaping.  Mrs. Adams also testified that while she has full online access to the Account, she does not have a debit card for the account – only Mr. Adams and their son, Tristen, possess debit cards.

Debtors raise *In re Hensley*, 393 B.R. 186 (Bankr. E.D. Tenn. 2008), in support of their argument that the Account should be treated as jointly owned property subject to exemption.  In *Hensley*, however, the question of whether a car titled solely in the name of the husband-debtor was owned by the debtors as tenants by the entireties turned on the fact that the trustee and the debtors had *stipulated* that all property on Schedule B was owned by the debtors as tenants by the entireties.  *Id.* at 194.  Such is not the case here.

Similarly, Debtors' reliance on *In re Garbett*, 410 B.R. 280 (Bankr. E.D. Tenn. 2009), is misplaced.  In *Garbett*, the question was whether a federal tax refund was subject to exemption by both debtors when only one of the debtors had federal withholdings for the year of the refund.  The court found that the "50/50 Refund Rule" should apply to allocate the joint refund between the debtors.  The court so held because both spouses must sign and file a joint return, resulting in joint and several liability of both spouses for any tax liability and the issuance of any refund check in the names of both spouses. Accordingly, "[b]ased upon the nature of the joint return, the [c]ourt conclude[d] that a joint income tax refund constitutes personal property that satisfies the unities of possession, interest, title, and time with right of survivorship subject to a rebuttable

8

presumption." *Id.* at 288. Such a holding concerning a joint tax return resulting in a joint tax refund does not inform the question before this Court relating to a business bank account held solely by one debtor.

Nevertheless, finding that the Account is not held by Debtors as tenants by the entireties does not resolve the issue. Tennessee courts have recognized that separate property may be converted into marital property through commingling and transmutation.

> Separate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (quoting 2. Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987) (other citations omitted)). "In the final analysis, transmutation is a matter of intention '. . . when separate property is treated in such a way as to give evidence of an intention that it becomes marital property.'" *Sickler v. Sickler*, No. 01-A-01-9710-CV-0057, 2006 WL 16309, at *5 (Tenn. Ct. App. Jan. 4, 2006) (quoting *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988)); *see e.g., Akers v. Akers*, No. M2006-01130-COA-R3-CV, 2007 WL 1791672, at *3 (Tenn. Ct. App. June 20, 2007) (finding that even though husband and wife had forty-eight different financial accounts, wife's failure to segregate funds from sale of business, which "[became] so severely commingled with the marital property," resulted in transmutation of property); *Arp v. Arp*, No. 03-A-01-9808-CV-00273, 1999 WL 427610, at *3 (Tenn. Ct. App. June 18, 1999) (affirming the

trial court's determination that husband's businesses were marital property based on the record establishing that the business ventures were "a partnership type of arrangement between the husband and wife" in which "[t]he proceeds and debts of [the] businesses were extensively intermingled with marital proceeds and debts, blurring any distinction between the properties").

The Tennessee Court of Appeals recently applied the principle of transmutation to determine whether a business entity was marital property. *Griffith v. Griffith*, No. E2014-00892-COA-R3-CV, 2015 WL 1744545 (Tenn. Ct. App. Apr. 14, 2015). In reversing the trial court's finding in favor of transmutation, the court analyzed the issue by reviewing the four factors applicable to transmutation of real property: "(1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property." *Id.* at *6 (quoting *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 at *4 (Tenn. Ct. App. Sept. 1, 2006)).

Although Debtors did not cite to any law on transmutation, Debtors argued in closing that Mr. Adams obviously is a sole proprietor but that the profits of the business were used by Debtors for their household. In other words, Debtors argue that the net earnings of the business become household funds in the Account. No evidence was presented, however, to show how much of the $11,962.88 in the Account as of the petition date constituted net earnings of the business. Further, as the Trustee argued, net earnings of Mr. Adams's business were not removed to a joint account or used to purchase a joint asset that is at issue for exemption – they were kept in the Account, which is a business account owned solely by Mr. Adams.

On application of the four factors recited by the *Griffith* court to the Account, the Court concludes that the Account was not transmuted from an individual business asset of Mr. Adams

to a marital asset. Considering the first factor – the use of the property as a marital asset – although Debtors testified that the Account was used by Mrs. Adams to make online payments of some household expenses, the fact that she did not write checks or have access to a debit card, especially given the recent, pre-petition addition of Debtors' son as a signatory and his possession of a debit card on the Account, weighs against transmutation. Regarding the remaining factors, the evidence establishes that Mrs. Adams did not work in or have an ownership interest in the business, was not an owner on the Account, and only funds of the business were deposited into the Account. These facts also weigh against transmutation of the Account from an individual, business asset to a joint, marital asset.

### III. Conclusion

Because the Court finds that the funds in the Account are solely an asset of Mr. Adams, only Mr. Adams may claim the funds as exempt under Tennessee Code Annotated § 26-2-103 and the exemptions claimed by Mr. Adams exceed the allowable amount under section 26-2-103.

For these reasons, the Trustee's Objection to Exemption shall be sustained, and the Court will enter an Order consistent with this Memorandum.

FILED: April 25, 2016

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE